[Civ. No. 23566.   Second Dist., Div. Two.   May 25, 1959.]

Guardianship of the Person and Estate of GEORGE ERNEST CHANDLER, a Minor. LOUISE R. CASAMELLO et al., Appellants, v. JAMES LaFAYETTE HAMMAN et al., Respondents.

Zimmerman & Kelly and Robert Ebiner for Appellants.

Hodges & Hamilton for Respondents.

FOX, P. J. — In this guardianship proceeding Lowell Chandler, the father of the ward, and Louise Casamello, the child's maternal grandmother, filed separate petitions for the revocation, *inter alia,* of letters of guardianship that had been granted to respondents over the person and estate of George Ernest Chandler, a minor. The trial court refused to grant any relief on either petition. As a consequence, both petitioners have appealed.

Chandler married Doris, the child's mother, in the summer of 1949. George was born in August, 1955. A few weeks thereafter the parents separated, the child remaining with the mother. Subsequently Doris and the child took up residence with one Todd Carey. In approximately September, 1956, Doris entrusted George's custody to her mother, Mrs. Casamello. He remained with her until March 28, 1957, when Doris picked him up and placed him in the care of respondents, Mr. and Mrs. Hamman, with whom she had recently become acquainted through Carey. Soon after this incident Mrs. Casamello filed a petition to be appointed guardian of the child. The Hammans countered with a petition for letters of guardianship on their own behalf. The conflicting petitions

were heard by Judge Evans. In August, 1957, he granted the petition of the Hammans and denied the petition of Mrs. Casamello. Chandler was not given notice of this hearing because his residence was unknown.

The present petitions of Chandler and Mrs. Casamello for the revocation of the letters of guardianship that had been issued to the Hammans were filed in April, 1958. Each petitioner sought his or her own appointment as guardian, or, in the alternative, the appointment of such petitioner's nominee.

At the hearing petitioners nominated Mr. and Mrs. Carl Mazurik. The evidence indicates that the Mazuriks are entirely fit and proper persons for such a responsibility and situated so that they could adequately provide for the child. They are of the Catholic faith—the same as that of Mrs. Casamello and Doris, who, however, testified that she ceased to be a practicing Catholic about the time her marriage with Chandler broke up and that ''I don't particularly wish to consider myself a member of the Catholic Church.'' She further testified that the possibility of George being brought up in other than the Catholic religion ''would not cause me concern.'' The father is not a Catholic but stated he had promised that the child should be brought up in the Catholic faith and wanted to make good his promise.

The Hammans had had the child for some 13 months at the time of the trial. They are devoted to George and are giving him good care. They have an adequate home and ample income to provide for him. The Hammans are of the Protestant faith, Mrs. Hamman having joined the Presbyterian Church when a child. More recently they have been attending various other churches.

From the time Chandler and Doris separated, when George was only a few weeks old, the father provided the mother with no financial support for the child. He has shown no interest in him until the instant proceedings were started. Since then, however, he has contributed five payments of $7.50 each toward his support. At the hearing he indicated he wanted to go back to school. At the conclusion of trial the judge appropriately commented with respect to the father's interest in the child and his asserted program for the child as follows: ''From about 1955 until—about the time of these guardianship proceedings were filed, he [the father] doesn't appear to have evidenced any interest in the child whatever.—He has practically deserted this child.—As to his present program, he has no program.''

The trial court found that Chandler, the father, "is not a fit and proper person to have the custody and control of said child." The court made a similar finding as to the fitness of Mrs. Casamello, the maternal grandmother, "because of her age, temperament and attitude, together with the uncertainty of her ability to support the minor child." The court also found that "the best interests of the child will be served by remaining in the custody and control" of the Hammans and that its best interests require that the Hammans continue as guardians of the minor. The court, however, made no finding as to the fitness of the Mazuriks.

In *Guardianship of Levy,* 137 Cal.App.2d 237 [29C P.2d 320], this court stated (p. 247) : "The cardinal consideration governing the court in its appointment of a guardian for the person and estate of a minor is how to serve most effectively the best interests and temporal, moral, and mental welfare of the child. (Citations.) A wide latitude must be allowed the trial judge in the exercise of the discretion vested in him, so that he may perform his statutory duty in a manner most conducive to the permanent well-being of the child."

It is also pointed out in the *Levy* decision (p. 248) that the removal of a guardian "rests within the broad discretion of the court."

Counsel for appellants do not seriously challenge the propriety of the findings that their clients are not fit and proper to be little George's guardians, nor the finding implicit in the judgment that the Hammans are qualified for such responsibility. Appellants' position is that the court erred in refusing to appoint their nominees, the Mazuriks, because the latter are "much more qualified to exercise guardianship of the person and are of the same religion as the infant child." This contention is without merit for it overlooks the "broad discretion" the court has in such matters. Neither the Hammans nor the Mazuriks are related to little George. The mother placed him with the Hammans, who are giving the child love, good care, a nice home and the other things that go into making a wholesome relationship between them and George. They had been thus providing for him for some 13 months at the time of the hearing and were fully discharging their duties and responsibilities in the premises. No reason appeared, touching the child's welfare, for a change. Just how well the Mazuriks would discharge such duties and responsibilities is necessarily a matter of conjecture. The court was entitled to take these

circumstances into account in exercising its discretion in favor of leaving the child in the care of the Hammans.

It is, of course, desirable that the religious belief of a guardian of a child be in harmony with that of the child's family. It is therefore a factor to be taken into account in appointing a guardian. It is not, however, a decisive consideration. The weight to be given to this factor is essentially for the trial court's determination, taking into account all relevant facts touching the family's religious beliefs and practices. It was clearly not incumbent upon the court to revoke the appointment of the Hammans and appoint the Mazuriks simply because the latter family is of the same religious faith as the mother and grandmother of George.

The record shows that the trial judge exercised a fair and reasonable discretion in the trial of the case and in its decision.

■ Appellants complain of the failure of the court to make a finding as to the fitness of the Mazuriks to be guardians of George. The findings that "the best interests of the child will be served by remaining in the custody and control" of the Hammans and that "the best interests of the minor child require" that the Hammans "continue as guardians" of George render wholly unnecessary any finding as to the fitness of the Mazuriks to be his guardians. Only in the event that a change in the custody and control of George was contemplated would a finding as to the fitness of the Mazuriks become material.

■ Appellants note the absence of any finding on the allegations of paragraph 6 of Chandler's petition, wherein it is alleged that in August, 1957, Judge Evans filed findings of fact and conclusions of law in the previous hearing and appointed the Hammans guardians of George and that they had filed their bond and entered upon the performance of their duties. These allegations were not denied by the Hammans and were accepted as true throughout the proceedings before Judge Frampton. There is no evidence to support a negative finding. In fact, a photostatic copy of Judge Evans' findings of fact, conclusions of law and order appointing the Hammans guardians of George is in the clerk's transcript in the instant proceeding. It is obvious that appellants have no basis for complaining of the absence of a finding on this matter. (*Logan v. Forster*, 114 Cal.App.2d 587, 596 [250 P.2d 730].)

■ Appellants complain that there is a conflict in the finding with respect to whether Chandler is the natural father of George. There is a specific finding that he "is the natural

father of said minor child." Finding Number 2, however, finds that the allegations contained in paragraph II of Chandler's petition are untrue. It is there alleged, *inter alia,* that Chandler is the father of George. The general finding is obviously an inadvertent error due to the hurried and imprecise manner in which the finding was prepared. The Hammans did not deny Chandler's allegation that he was the father of the child and there was no suggestion during the trial that he was not in fact George's father.[1] Furthermore, it is manifest that the court considered Chandler to be the father for it recognized his status to maintain the proceeding and in his summation of the case at the conclusion of the trial Judge Frampton stated: ". . . it appears that he [Chandler] is the natural father of the child." It is clear that the specific finding that Chandler is the father of the minor is the one the court intended to make, and the only finding on this question that the evidence supports. On the question here presented, we adopt the statement of Mr. Presiding Justice Shinn in *San Gabriel Valley Ready-Mixt* v. *Casillas,* 142 Cal.App.2d 137, 141-142 [298 P.2d 76] : "We would treat these conflicts seriously were we not convinced from past experience with findings made by reference to certain paragraphs of the pleadings that the findings . . . were no doubt prepared by counsel while in a state of listless abstraction and unawareness of the facts to which they relate or their significance. We, therefore, disregard the findings which, due to obvious inadvertence and inattention, are the opposite of other specific findings which fully support the judgment." Furthermore, it is apparent that Chandler was in no way prejudiced by this inadvertence.

Respondents filed objections to Chandler's petition. Their objections were set forth in six paragraphs and alleged a number of asserted facts which, if established, would tend to indicate Chandler's unfitness to have the care and custody of George. A blanket finding was made that the allegations contained in these objections are true. One of the statements thus found to be true is that Chandler "has spent considerable time in jail." There is no evidence to support this charge. This is simply another example of the slipshod practice too frequently followed in the preparation of findings. Since there was no evidence along this line it is plain the trial judge

[1] In their initial petition for appointment as the minor's guardians, which was heard by Judge Evans, the Hammans alleged that Chandler was the father of George and Judge Evans found this allegation to be true.

did not take such asserted circumstance into account in deciding the case. The judge discussed the evidence at the conclusion of the trial and announced his decision from the bench. It is apparent that Chandler was not prejudiced by the inadvertence in the preparation of the findings, which occurred some time after the decision had been announced. We find no justification for reversing the judgment.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.